# Sanderson *versus* Pennsylvania Coal Company.

In an action by A., a property owner, against B., a mining company, to recover damages for the pollution by B. of a private watercourse, which flowed through A.'s lands and was used by her for domestic purposes, *Held*,

1. The measure of damages is the sum which will compensate the plaintiff for the actual loss which she sustained by reason of said pollution prior to the institution of the suit.

2. It was error to leave said amount entirely to the discretion of the jury, with instruction that they were at liberty to find a verdict for any damages, whether nominal or compensatory. They should have been instructed to determine from the evidence what sum would be a full compensation for the loss, and it was not discretionary with them to find for less.

3. The fact that the tortious act of the defendant increased the supply of water and in other ways was of advantage to the plaintiff is immaterial, and such benefits cannot be set up by way of set off or recoupment.

4. It was error to restrict the damages to the loss in the value of the water, irrespective of that of the improvements which had been erected for its ordinary and useful purposes.

5. It was error to admit, in mitigation of damages, testimony to show that the mining of coal in the anthracite region is below water mark, that water is always encountered in mining operations in that region,

[Sanderson v. Pennsylvania Coal Co.].

and that defendants' method of working its mines is the ordinary, rea-sonable and proper one, such facts being irrelevant.

6. An offer on behalf of the plaintiff to prove " what was the permanent injury and damage to the property itself, that is, the freehold, in the loss of value caused by the destruction of this water," was properly excluded.

February 19th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Lackawanna county :* Of January Term 1881, No. 274.

Case, by J. Gardner Sanderson and Eliza McBrair, his wife, in right of the wife, against the Pennsylvania Coal Company, to recover damages for injuries to plaintiff's watercourse, caused, as alleged, by the working of defendant's mines. Plea, not guilty.

On the trial, before HANDLEY, P. J., the testimony disclosed the following facts: Eliza McBrair Sanderson purchased in 1868 a lot of ground in the city of Scranton, upon which she erected a residence and made other valuable improvements. Through this tract of land, and as one of the considerations of said purchase, there flowed a private stream of pure water, called Meadow Brook. For the purpose of utilizing this watercourse for domestic purposes, she constructed dams, laid pipes, built tanks and made other valuable improvements. Shortly after making said purchase and improvements, the defendant company sunk a coal shaft several miles above plaintiff's residence, and so operated said mine, as to discharge their mine water into said stream, whereby it became corrupted and unfit for domestic purposes.

Upon a former trial of the cause in 1878, a compulsory nonsuit was granted, on motion of defendant's counsel, on the ground that the wrong complained of was *damnum absque injuria.* This judgment was reversed by the Supreme Court and a new venire awarded (See 5 Norris 401).

Upon the second trial of the case, counsel for plaintiff requested a witness to " state what was the permanent injury and damage to the property itself, that is the freehold, in the loss of value caused by the destruction of the water." Objected to. Objected sustained. Exception. (First assignment of error.)

Counsel for defendant offered to show in mitigation of damages, by various witnesses (1) that the manner in which defendant operated its mines was the customary mode in Lackawanna and Wyoming counties ; (2) that over 300 collieries in said region are so operated and encounter water in the same manner as defendant's mines ; (3) that what was done by defendant in

working its mines was done in the ordinary, reasonable and proper method. Counsel for plaintiff objected to these offers as irrelevant. Objections overruled, and evidence admitted for the purpose of showing (1) that the mining of coal in the anthracite region is below water level; (2) that said mines encounter water wherever they mine coal; (3) in mitigation of damages. Exceptions. (Second assignment of error.)

W. R. Storrs, a witness, was asked by defendant's counsel, what was his " opinion of the advantages and disadvantages of the water pumped into that stream, whether it is an injury or a benefit connected with everything in the case?" Objected to. Objection overruled. Exception. (Third assignment of error.)

The same witness was also asked his opinion " as to the cost of keeping up the improvements of the plaintiff." Objected to as incompetent. Objection overruled. Exception. (Fourth assignment of error.)

The defendant presented, inter alia, the following point :—

10. " All that the plaintiff in this case can claim, if anything, is the use as a riparian owner of the water in its natural state, and she cannot claim for the cost of, or damages to, any artificial construction put up by her for the use of the water from this stream, nor for the cost of introducing other water for such artificial purposes."

Answer of the court.—This point we affirm, with this qualification : while passing upon this part of the case it is your duty to take into consideration the evidence of Messrs. Mattes, Platt, and the several witnesses who were called, and the question put to each of them, whether the discharge of this water from the Gipsy Grove Breaker into Meadow Brook was a benefit or damage to the plaintiff? You will bear in mind that all of the defendants' witnesses called upon this point considered that the constant pumping and flowing of this water was a benefit to the plaintiff's property. Hence, if you should reach that part of this case it becomes your duty, while ascertaining what the damages are, to take into consideration whether the flowing of this water, as the testimony now shows it does flow from day to day, is a benefit or a damage to the plaintiff's property. If you should ascertain that it was a benefit, then it becomes your duty to ascertain how much that benefit is, and to award the damages less that amount." (Ninth assignment of error.)

The court charged, inter alia, as follows :—

" Now, you have it in your power, after you have examined all of the evidence in this case, to say what damage the plaintiff is entitled to recover. The amount of damages is altogether in your discretion; what damages you may award the plaintiff is purely for you. You may, in your discretion, say

[Sanderson *v.* Pennsylvania Coal Co.]

that she is entitled to nothing more than nominal damage, which would be nothing more than six cents; you may say that she is entitled to $500; you may say that she is entitled to $1,000; you may go as high as the amount named in the evidence, if you believe that is the plaintiff's actual damage, after ascertaining whether the flow of this water into the stream is a benefit to her or not. If you find it is not a benefit and that she ought to recover, then, of course, you will give to the plaintiff damages to that amount, if you please. Now, as I have said in the general charge, this is an important case, but notwithstanding its importance, it is simply reduced to a question of right or wrong. If the plaintiff is right, if the law is with her, under the evidence and circumstances, then she is entitled to your verdict. Keeping in view the industrial interests of this valley, keeping in view the large number of men that are employed by these mining and coal shipping companies, keeping in view the fact that by the least turn of this case you may cripple or not cripple the industries of this part of the Commonwealth, it becomes your duty to approach the evidence with great caution, and say whether the verdict ought to be for the plaintiff or for the defendants. If you believe under all the surrounding circumstances, and under all of the evidence showing the mode and manner of mining coal, that it was impossible for these defendants to mine this coal and have this water flow out in any other manner than the one in which the evidence discloses, then of course your verdict ought to be for the defendants. You can only give a verdict for the plaintiff in this case when you shall have ascertained from the evidence that the defendants did pollute and corrupt the water of this stream." (Eleventh assignment of error.)

Verdict for the plaintiff for $250, and judgment thereon. To this judgment, two writs of error were taken, one by the defendant to secure a reconsideration of the question of its liability (reported in 13 Norris 302); and the present one by the plaintiff, who assigned for error the action of the court in excluding her testimony as to permanent injury to the freehold, in admitting defendant's testimony recited above, in answering defendant's tenth point and in so charging the jury as to cause them to give a verdict for less damages than of right she should have recovered.

*A. Ricketts*, for the plaintiff in error.—At the same time that the court rejected the evidence as to permanent injury to the property, they admitted evidence as to the benefit to the property, from the acts of the defendants. There must have been error in either the one or the other of such rulings, if not in both. We submit that there was error in both; that a man

cannot set off against the consequences of his own wrongful act, supposed benefits arising therefrom.   Set off is only ad-missible by virtue of statutory enactment, and then only in ac-tions ex contractu, where the damages are certain and liquidated. The court, by receiving the evidence as to supposed advantages to plaintiff's property from the wrongful act of the defendants, practically permitted a set off in an action ex delicto for unliq-uidated damages.   More especially was it error to admit as tes-timony the mere opinion of witnesses as to said advantages.

The amount of damages was not discretionary with the jury. It was their simple duty to give such damages as the evidence showed to be compensatory, and the court erred in leaving to the jury the question whether the damages should be nominal or compensatory.

*Post & McClintock*, for the defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court, April 16th 1883.

The controlling principles in this case respecting the plain-tiff's right to recover, if injury was caused to her by the defend-ant polluting the waters of Meadow Creek with water from its colliery, were stated in an exhaustive opinion by the late Justice WOODWARD, 86 Pa. St. 401.   Upon the second hearing there was quite as little recognition of a right in the owner of a colliery to materially injure the property of another by foul-ing a stream with mine water, as upon the first: 94 Pa. St. 302. Now the question is, whether the plaintiff is entitled to com-pensation for the direct and immediate loss resulting from the injury.

In affirming the plaintiff's points the court ruled that if the defendant polluted the waters of Meadow Brook, thereby caus-ing an injury to the plaintiff, she is entitled to recover damages, that the measure of damages is compensation for the injury re-sulting from the defendant's acts, and that the verdict should be for a sum that will compensate the plaintiff for the actual loss she suffered, caused by the defendant, previous to bringing the action.   That was in accord with the general rule in actions of tort, where the injury was unintentional and unaccompanied with malice : but, though sound, it was frittered away by other instructions.

Near the end of the charge the court said : "Now you have it in your power, after you have examined all the evidence in this case, to say what damage the plaintiff is entitled to recover. The amount of damages is altogether in your discretion ; what damages you may award the plaintiff is purely for you.   You may, in your discretion, say that she is entitled to nothing more

than nominal damages, which would be nothing more than six cents ; you may say that she is entitled to $500 ; you may say that she is entitled to $1,000 ; you may go as high as the amount named in the evidence, if you believe that is the plaintiff's actual damage. After ascertaining whether the flow of water in this stream is a benefit to her or not, if you find it is not a benefit and that she ought to recover, then, of course, you will give to the plaintiff damages to that amount, if you please." All that was error. It gave the jury full liberty to give damages in their discretion—to do as they pleased. To exercise the power to find nominal damages, or a fraction of what was proved, was against law—their duty, under their oaths, was to determine from the evidence what sum would be a full compensation for the loss suffered by the plaintiff from the defendant's fouling of the waters of Meadow Brook, and they had no lawful power to find damages for less. They were bound to " go as high as the amount named in the evidence," if they believed she suffered so much damage. It was no matter of discretion, but a sum to be determined from the evidence that would compensate the loss ; as clearly so as if the plaintiff's house had been destroyed and the jury were to find its value from the testimony in the cause. Even if deduction could be made for benefits, the value of the loss should first be found.

There was no allegation of injury from overflow or for swelling the waters of the stream ; but the plaintiff complained that the defendant had made the water unfit for the uses she had enjoyed. " Though fouled, there is more of it," is not a good answer. A large stream of impure and unwholesome water may be of greater market value than a small one that is pure and wholesome ; and if the benefits of a large and constant flow of unwholesome water, which spoils a small pure stream for the uses of a dwelling house, can be off-set against the owner's claim for the injury, he is without remedy. His property can be taken or injured against his will, with impunity, for private use. This is not the law. He may hold and enjoy his property so long as he chooses, except when taken, injured or destroyed for use of the public. A man has no right to turn a stream out of its natural channel into another stream, thereby increasing the flow of the latter through another man's land ; and though no appreciable damage could be proved, an action would lie. If it be conceded that the turning of water from a colliery into a stream is an exceptional case, for which an action will not lie where it has done no injury in fact ; yet if it has fouled the stream the injured party is entitled to redress. The plaintiff avers that the defendant has subjected her to conditions that did not exist when she built the dams, laid pipes, improved her property and began to use the

[Sanderson *v.* Pennsylvania Coal Co.]

water of the stream, not by increasing the quantity but by spoiling the water for her uses. " There is no set-off, or recoupment of damages, not founded on the undertaking or default of the party sought to be subjected to such adjustment, nor can he who has inflicted a wrong require the injured party to accept indemnity in any other way than such as the law provides :" Gerrish *v.* New Market Mang. Co., 10 Fost. (N. H.) 478. No infringement of the rights of another can be justified on the ground that the act is a benefit to the owner, if it is done against his will : Tillotson *v.* Smith, 32 N. H. 90. Benefit to a meadow below a dam by a ditch, dug at the time of the erection of the dam by the owner of the dam, through his own land, cannot be set off against damage to the meadow by subsequent overflowing occasioned by the dam ; and the cost of the ditch is immaterial in assessing such damages : Giles *v.* Stevens, 13 Gray 146.

A few cases may be found that are in seeming conflict with the rule that in the matter of nuisance there is no set-off or recoupment; but none in Pennsylvania. Where a case arises of permanent injury, where the measure of damages is the difference in value of the land as affected by the nuisance, and what it would be worth if unaffected, in some sense it may be that benefits are properly considered ; but the real question is, What is the amount of loss? Here the court, upon the defendant's objection, properly overruled the plaintiff's offer to prove " what was the permanent injury and damage to the property itself, that is, the freehold, in the loss of value caused by the destruction of this water." It is not apparent that the destruction is permanent. The defendant may abate the nuisance.

We are also of opinion that it was error to affirm the defendant's tenth point : " All that the plaintiff in this case can claim, if anything, is the use, as a riparian owner, of the water in its natural state, and she cannot claim for the cost of, or damage to, any artificial construction put up by her for the use of the water from this stream, nor for the cost of introducing other water for such artificial purposes." If, before the defendant spoiled the water, the plaintiff had erected proper constructions for its convenient use, and the defendant injured or rendered them useless, the plaintiff is entitled to compensation. What rule limits the damages to the value of the water in its channel, exclusive of all improvements for its convenient and reasonable use? As well might a court and jury in case of diverting the waters of a creek from a valuable mill-property, and consequent destruction for use, as a mill, limit the owner's damages to the value of the mill-site in its natural state, exclusive of loss for injury to and uselessness of the dam, building, machinery and other improvements. The point and its answer

[Sanderson *v.* Pennsylvania Coal Co.]

limited the plaintiff's damages to the water in the channel, with instructions to deduct the amount of benefit, and the ninth assignment must be sustained.

Testimony was received to show that the mining of coal in the anthracite region is below water level, that water is encountered wherever coal is mined in that region, and that what was done by the defendant in working its mines and pumping water therefrom was in the ordinary, reasonable and proper mode of working its mines, " for the purpose of mitigating damages in this case." It was offered for other purposes, for which it was rightly rejected ; it should not have been received at all, for it was irrelevant lumber. This was a first suit for an alleged nuisance, and the unmistakable points raised in the proceedings were the plaintiff's right of recovery if she was actually injured by the mine water, and the amount of merely compensatory damages. When the measure of damages is compensation only for the loss by the injury, it is difficult to conceive how the mode of working a mine below the water level would be a proper thing to consider in ascertaining the amount.

The third and fourth assignments are well taken. For reasons already stated, testimony of the advantages to the plaintiff resulting from the acts of the defendant, was incompetent. And respecting the fourth, there was no foundation laid for receiving the opinion of the witness as to the cost of keeping up the improvements. His knowledge was only " a part of the testimony by Mr. Anderson."

The fifth and sixth assignments are not sustained. Of the subject of the fifth, it is uncertain that the testimony related to matters below the reservoir. It will not be presumed that evidence of polluting the water by other people, below the reservoir, was received. And as to the subject of the sixth, the plaintiff has not shown the testimony proposed to be rebutted. That testimony should have been printed, that the pertinency of the offer in rebuttal could be determined.

Judgment reversed and venire facias de novo awarded.